## CRUTSINGER et al. v. B. F. AVERY & SONS, Inc., et al.

### No. 4734.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1934.

Foster, Hall, Barret & Smith, of Shreveport, for appellants.

J. Rush Wimberly, of Arcadia, for appellee.

MILLS, Judge.

The facts in this case, developed on the original trial, are fully covered in the opinion remanding it. (La. App.) 146 So. 789. It is now only necessary to review the additional evidence adduced on the new trial and to determine the quantum of damage. The order of remand clearly limits the new trial to testimony based upon a physical examination of plaintiff by defendants' experts and rebuttal of that testimony.

At the second trial, defendants offered Drs. W. M. Scott, a general practitioner;

George B. Garrett, a surgeon; W. R. Harwell, a radiologist; and D. H. Duncan, who specializes in mental and nervous diseases. The testimony of the first three is that the X-ray and a thorough physical examination made in May, 1933, disclosed no physical impairments, except a perfectly healed scar, two inches long, on the forehead near the hair, a small scar under the chin, and a slight elevation of one end of the collar bone, with a bony projection on its under surface a quarter of an inch thick and about one inch long. Her general physical condition was good. The broken ribs had healed without displacement, and there was no evidence of arthritis or cranial depression. The bony projection prevents a complete lifting of the arm and causes some pain when it is attempted. Though not a specialist on that subject, Dr. Scott noticed no mental depression.

Dr. Duncan, the specialist in nervous disorders, whose failure to testify at the first hearing was commented upon in our original opinion, now appearing for defendants, says that he first saw plaintiff at the Highland Sanitarium on June 30, 1931, and for four or five days in July, shortly after the accident; that she was then "depressed, sleepy; tired, nervous and scared." "Was in a very disturbed abnormal condition." There was no evidence of organic injury to the nervous system and no objective symptoms of a diseased mental condition; that she left without being discharged and before the completion of his diagnosis; that at a second examination made in April, 1933, her condition had changed entirely. On that date he found no demonstrable pathological nervous symptoms. Except for complaints of pressure about the head and nervous headaches, she appeared mentally normal. He could find no actual cranial pressure or abnormality. She stated to him that she could perform her usual household duties as long as she avoided over excitement. She co-operated perfectly with him in the examination. He thinks that at the present time she is easily excited and is suffering from mild neurosis, from which she will probably never completely recover; her improvement being dependent upon the reception of proper treatment.

The plaintiff offered in chief testimony that we will consider as in rebuttal, to the effect that since the accident Mrs. Crutsinger has been nervous, excitable, and subject to headaches.

Drs. R. C. and J. D. Young, who have been treating the plaintiff, disagree with Dr. Duncan as to the degree of her neurosis. They say that the type is that of fears, irritability, and abnormal personality, accompanied by headaches and dizziness. That she is not able to properly perform the duties of a housewife and mother with regularity, and that because of the lapse of time without improvement, her chances of recovery have lessened.

We are satisfied from the whole testimony that the scars are not seriously disfiguring and that the arm injury is a cause of some pain and discomfort, but not disabling; that the neurosis is serious and may be permanent, with a chance of recovery, with care and good treatment. This nervous trouble only incapacitates her when she has been excited, but she is, because of her condition, easily excited.

After the new trial in the lower court, final judgment was rendered awarding Mrs. Crutsinger individually $7,124.50, with interest from judicial demand, and $250, with like interest, for each of the children. We conclude that because of her long suffering the $1,500 awarded for that element of damage is not excessive. We think the $5,000 for disfigurement and disability is and should be reduced to $3,000. For the slight injury shown on the original trial, we think $150 is ample for Quay Crutsinger.

The judgment appealed from is accordingly amended by decreasing the amount awarded Mrs. Crutsinger individually from $7,124.50 to $5,124.50, and that awarded Quay Crutsinger from $250 to $150, and as amended, is affirmed; plaintiff to pay the cost of appeal.